

**Your Missouri Courts**

Search for Cases by: Select Search Method... ▾

.net

Judicial Links  |  eFiling  |  Help  |  Contact Us  |  Print                    Logon

**1846-CC00162 - STATE OF MISSOURI V BRANSON DUCK VEHICLES, L ET AL (E-CASE)**

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

This information is provided as a service and is not considered an official court record.

Sort Date Entries: ○ Descending  ● Ascending          Display Options: All Entries ▾

**08/31/2018**    **Judge Assigned**

**Petition Filed - No Fees**
Petition for Preliminary and Permanent Injunctions, Restitution, Civil Penalties and Other Relief-tm
    **On Behalf Of:** STATE OF MISSOURI, JOSHUA D. HAWLEY

**Filing Info Sheet eFiling**
    **Filed By:** AMY KATHLEEN DAVIS

**Summons Issued-Circuit**
Document ID: 18-SMCC-479, for RIPLEY ENTERTAINMENT INC.

**Summons Issued-Circuit**
Document ID: 18-SMCC-480, for BRANSON DUCK VEHICLES, LLC.

**09/04/2018**    **Entry of Appearance Filed**
Entry of Appeance; Electronic Filing Certificate of Service. /kc
        **Filed By:** NATALIE RICKETTS WARNER
        **On Behalf Of:** STATE OF MISSOURI

Case.net Version 5.13.19.1                    Return to Top of Page                    Released 02/02/2018

**Exhibit 1**

Electronically Filed - Taney - August 31, 2018 - 02:19 PM

IN THE CIRCUIT COURT OF TANEY COUNTY
STATE OF MISSOURI

| | |
|---|---|
| STATE OF MISSOURI, ex rel.<br>Attorney General Joshua D. Hawley,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>BRANSON DUCK VEHICLES, LLC<br><br>　　　Serve:<br>　　　CT Corporation System,<br>　　　Registered Agent<br>　　　120 South Central Ave.<br>　　　Clayton, MO 63105<br><br>and<br><br>RIPLEY ENTERTAINMENT INC.<br><br>　　　Serve:<br>　　　CT Corporation System,<br>　　　Registered Agent<br>　　　120 South Central Ave.<br>　　　Clayton, MO 63105<br><br>　　　Defendants. | )<br>)<br>)　Case No.<br>)<br>)　Division:<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PETITION FOR PRELIMINARY AND PERMANENT INJUNCTIONS, RESTITUTION, CIVIL PENALTIES, AND OTHER RELIEF

Attorney General Joshua D. Hawley brings this action to protect the consumers of Missouri from the unfair practices, misrepresentations, false statements, deception, omissions and fraud of Defendants. Defendants have been on notice for decades of ongoing safety hazards that posed a present and

Exhibit 1

1

deadly danger to every person who boarded a duck boat. Defendants kept that information from passengers and made false promises, fraudulent statements, and misrepresentations to consumers that safety was their top priority when in actuality it was their own profits. Plaintiff, as the chief law enforcement officer of the State of Missouri, is charged with protecting not only the rights of consumers but their lives as well. Plaintiff brings this Petition for Preliminary and Permanent Injunctions, Restitution, Civil Penalties, and Other Relief against Defendants Branson Duck Vehicles, LLC and Ripley Entertainment Inc., and upon information and belief, states as follows:

<u>PARTIES</u>

1.      Joshua D. Hawley is the Attorney General of the State of Missouri and brings this action in his official capacity pursuant to Chapter 407, RSMo.

2.      Defendant Branson Duck Vehicles, LLC is a limited liability company registered in the State of Missouri and located at P.O. Box 1837 Branson, Missouri 65615.

3.      Branson Duck Vehicles, LLC is the titled owner of the amphibious passenger vehicle involved in the events described in this cause of action, Stretch Duck #7.

4.      Defendant Ripley Entertainment Inc. is registered in the State of Missouri as a foreign for-profit corporation, organized in Delaware, with its

**Exhibit 1**

principal place of business or corporate headquarters at 1800-1067 West Cordova Street, Vancouver, British Columbia V6C1C7-0007.

5.    Ripley Entertainment Inc. also operates its business at 7576 Kingspointe Pkwy, Suite 188, Orlando, FL 32819. Ripley Entertainment Inc. operates amphibious vehicles in Branson, Missouri under the name "Ride the Ducks." Ripley Entertainment Inc. is the employer of both the Driver and Captain who were aboard the amphibious passenger vehicle involved in the events described in this cause of action, Stretch Duck #7.

6.    Defendants Branson Duck Vehicles, LLC and Ripley Entertainment Inc. (collectively "Defendants") have engaged in trade and commerce within the State of Missouri, including Taney County, by marketing, offering, selling, and/or providing tour rides aboard amphibious vehicles.

7.    All references to Defendants include acts done individually, in concert, or by or through principals, officers, directors, members, employees, agents, representatives, affiliates, assignees, and successors of Defendants.

8.    Defendants advertise to Missouri consumers to engage in trade and commerce as passengers on "Ride the Ducks" via a multitude of avenues, including but not limited to online, print, television, and social media advertising.

**Exhibit 1**

3

## JURISDICTION AND VENUE

9.     This Court has subject matter and personal jurisdiction over this action under Article V, § 14 Mo. Const. and § 407.020 RSMo.

10.     Venue is proper in this court because the petition alleges violations that occurred in Taney County, State of Missouri.

## GENERAL ALLEGATIONS

### I.     History of Duck Boat Deaths and Incidents

11.     DUKWs, also known as duck boats, are military vessels that were originally designed for combat use during World War II to carry two drivers and military cargo. They were not designed to accommodate commercial passengers or to provide for their safety or evacuation.

12.     According to a 2001 National Transportation Safety Board ("NTSB") report, during restoration, the vessels are completely stripped, rebuilt and equipped to carry passengers, but few changes are made to ensure the safety of commercial passengers in the event of flooding.

13.     On May 1, 1999, 13 people, including three children, were killed when the Miss Majestic duck boat sank in Lake Hamilton near Hot Springs, Arkansas. Due to poor maintenance, the Miss Majestic began to take on water and quickly sank. Only seven passengers and the captain survived the sinking of the Miss Majestic.

4

Exhibit 1

14.     According to the NTSB investigation, one reason the Miss Majestic sank was because the duck boat had no reserve buoyancy to keep it afloat despite taking on water and a majority of the passengers were trapped and killed due to the duck boat's canopy roof.

15.     Following the Miss Majestic tragedy, the NTSB issued Safety Recommendation M-00-5 to thirty operators and refurbishers of duck boats in the United States.  This recommendation stated: "*Without delay*, alter your amphibious passenger vessels to provide reserve buoyancy through passive means, such as watertight compartmentalization, built-in flotation, or equivalent measures, so that they will remain afloat and upright in the event of flooding, even when carrying a full complement of passengers and crew." (emphasis added).

16.     At that time, Ride the Ducks of Branson, LLC, the former owner of Stretch Duck #7, reported to the NTSB that it was building a prototype aluminum duck boat that incorporated foam buoyancy into the design. However, Ride the Ducks of Branson, LLC abandoned the implementation of any safety measures to increase reserve buoyancy pursuant to Safety Recommendation M-00-5.

17.     On June 23, 2002, four people died when the Lady Duck amphibious vehicle sank in Ottawa, Canada.  The modified Ford truck took on water and sank quickly due to the failure of four bilge pumps.  All of the victims

5

Exhibit 1

were able to put on life preservers, but they were trapped inside by the duck boat's canopy.

18.    On July 7, 2010, two people died on a duck boat operated by Ride the Ducks International in the Delaware River in Philadelphia when a barge collided with a disabled duck boat. The duck boat stalled after a small engine fire and drifted toward a barge, which was being towed by a tugboat. The duck boat sank rapidly after the collision. A 16 year-old passenger lost her life after saving another when she threw a life preserver to the duck boat's first mate.

19.    Ride the Ducks International LLC and the company that operated the tugboat settled the lawsuit brought by the victims of the Philadelphia duck boat tragedy for $17 million in May 2012 after the court heard testimony from some of the surviving passengers.

20.    In 2013, two duck boats sank in Liverpool, England – one in March 2013 and another in June 2013. According to British authorities, in both incidents, the boats had insufficient buoyancy foam.

21.    In September 2013, British authorities reported that a duck boat caught fire on the River Thames in London because the buoyancy foam was too tightly packed around the machinery. The passengers were able to evacuate.

22.    Roadway accidents have also plagued duck boat operations nationwide. These roadway duck boat accidents have injured and killed people in Seattle, Philadelphia, and Boston.

6

**Exhibit 1**

23.   In 2011, a duck boat operated by Ride the Ducks International, LLC crashed into a motorcycle stopped at a red light in Seattle. The driver of the motorcycle was dragged over a block, and his arm, leg, and pelvis were crushed.

24.   In 2015, five college students were killed and 69 people were injured when a duck boat crashed into a bus on the Aurora Bridge in Seattle. The axle in that duck boat, manufactured by Ride the Ducks International LLC, broke, causing the duck boat to lurch suddenly into the oncoming bus. The axle had not been repaired as recommended.

25.   In 2016, after a federal investigation into the Seattle duck boat crash, Ride the Ducks International, LLC was fined up to $1 million for failing to comply with U.S. vehicle manufacturing rules by the National Highway Traffic Safety Administration.

26.   In 2015, a pedestrian was killed by a duck boat when she was crossing the street in Philadelphia.

27.   In 2016, a woman was killed in Boston when a duck boat crashed into the scooter she was riding.

II.   **Defendants' Advertisements and Targeting of Consumers**

28.   Ripley Entertainment Inc. began operating Ride the Ducks at Branson's Table Rock Lake and Lake Taneycomo near Branson, Missouri after acquiring the company in December 2017.

7

**Exhibit 1**

29.     Defendants would transport tourists and passengers on land and water tours of the area via an amphibious passenger vehicle called a duck boat.

30.     Defendants advertised a variety of "Fun Adventures" including the "Table Rock Lake Adventure" and the "Lake Taneycomo Adventure."

31.     Defendants advertised that the adventures were "Handicap & Wheelchair Friendly."

32.     Defendants advertised that the adventures were "Fun for all ages."

33.     Defendants advertised that consumers, including children, could "Drive the Duck" including showing many photographs of young children operating the duck boat on the water.

34.     Defendants advertised online that the adventure is "perfect for groups of all ages and types."

35.     Defendants represented that consumers should bring groups from senior centers, church groups, or veteran and family reunions.

36.     Defendants also targeted youth groups, educational field trips, scout outings, birthday parties, and other youth events.

37.     Defendants represented that they were "committed to your safety and fun while you're aboard the Duck, your ride is one of the safest attractions or tours to do while you're in Branson and regularly inspected by the United States Coast Guard to ensure that everything is up to code. Rigorous testing and inspections ensure that your ride is as safe as possible – with the vehicles

8

Exhibit 1

held to the highest safety standards in the automotive and marine industries. Whether you're [sic] bring a baby along or a great-grandparent, you will find that the rides offer some of the most fun that you will find anywhere in the area!"

38.     Defendants targeted those people who were most at danger from harm and even death, including infants, children, and the elderly.

### III.    Defendants Knew That Their Modified Duck Boats Operating in the Branson Area Were Inherently Dangerous.

39.     Defendants represented that the "Ducks resemble the WWII DUKW in appearance only. The Ride the Ducks vehicle is built, exclusively for us, from the ground–up using the latest in marine safety."

40.     Stretch Duck #7 was actually manufactured as an original DUKW in Pontiac, Michigan in January 1944.

41.     The NTSB found in 2000 that these amphibious vessels were vulnerable to rapid sinking because they lacked reserve buoyancy. The NTSB concluded after the Miss Majestic event that another life-threatening accident could occur unless the vulnerability to flooding and sinking was addressed.

42.     NTSB recommended in February 2000 that operating companies and amphibious passenger vessel manufacturers should "without delay" make all existing and future amphibious passenger vessels more survivable and

**Exhibit 1**

9

stable so they would not sink in the event of flooding by adding a passive safety system for flooding.

43. The NTSB found a passive safety system that does not require dewatering pumps, such as compartmentalization with watertight bulkheads, installation of buoyant material inside the hull, or incorporation of buoyant sponsons exterior to the hull, was the only fail-safe measure to ensure the level of dependability essential to safeguard the lives of passengers.

44. The NTSB naval architectural firm that conducted stability calculations for the Miss Majestic report found it was both practical and cost-effective to install watertight bulkheads and built-in flotation material.

45. Stretch Duck #7 was not equipped with a passive safety system of any kind even after the owner was notified of the NTSB's findings and recommendations.

46. In its 2001 final report on the Miss Majestic sinking, the NTSB found that contributing to Miss Majestic's sinking was a flaw in the design of DUKWs as converted for passenger service in that the lack of adequate reserve buoyancy did not allow the vehicle to remain afloat when flooded.

47. Also contributing to the unsafe condition of the Miss Majestic was the continuous canopy roof that entrapped passengers within the sinking vehicle.

**Exhibit 1**

10

Electronically Filed - Taney - August 31, 2018 - 02:19 PM

48.     In response to its own findings in the Miss Majestic, the NTSB recommended that until such time that owners provide sufficient reserve buoyancy in the amphibious passenger vehicles they would "require the following: removal of the canopies for waterborne operations or installation of a Coast Guard-approved canopy that does not restrict either horizontal or vertical escape by passengers in the event of sinking, … installation of independently powered electric bilge pumps that are capable of dewatering the craft at the volume of the largest remaining penetration to supplement either an operable Higgins pump or a dewatering pump of equivalent of greater capacity …[and] where canopies have been removed on amphibious passenger vehicles for which there is not adequate reserve buoyancy, require that all passengers don life jackets before the onset of waterborne operations."

49.     According to the NTSB, the Higgins pump on the Miss Majestic should have been able to discharge 250 gallons per minute if it was in operable condition.

50.     Based on information and belief after a preliminary investigation, the design and mechanical structure of Stretch Duck #7 did not conform to the NTSB safety recommendations because: (a) it did not have sufficient reserve buoyancy, (b) it had not had the Higgins pump replaced with a dewatering pump of equivalent or greater capacity, and (c) it did not have the canopy

**Exhibit 1**

removed or undergone installation of a Coast Guard-approved canopy with required life jackets when upon the water.

51.     In September 2017, Defendants hired Steven Paul of Test Drive Tech to perform Department of Transportation ("DOT") safety inspections of all duck boats located in Branson.

52.     Steven Paul performed 24 commercial truck inspections of the duck boats.

53.     Steven Paul found significant and extensive mechanical and exterior issues as well as wheel damage on September 7, 2017. Specifically, Stretch Duck #7 was found to have a mechanical issue that affected the safe performance of the duck boat. The front intake hatch did not close in an emergency which would allow water to pour into the duck boat and could cause a catastrophic event such as the sinking of the duck boat.

54.     In Steven Paul's final report to Defendants, he stated there were noted safety concerns of the amphibious passenger vessels, including the fact that the vehicle exhaust exits in front of the driver/passenger compartment and the rear of the duck boats were not equipped with rear impact protection as required by DOT regulations.

55.     After his inspection and review of the duck boats, it was his recommendation and conclusion that inherent design flaws did not maximize passenger and operator safety.

**Exhibit 1**

12

56.     Defendants did not redesign the duck boats or seek to pass DOT regulations after receiving Mr. Paul's report and, as a result, passenger safety suffered.

## IV.     The Tragic and Preventable Events of July 19, 2018

57.     Ride the Ducks adventure tickets were available for purchase from Defendants by consumers from March through November each year.

58.     On July 19, 2018 Defendants operated amphibious passenger vehicles, also known as duck boats, on highways of the State of Missouri and on the water of Table Rock Lake while operating in trade and commerce.

59.     On July 19, 2018 one of those duck boats, Stretch Duck #7, sank on Table Rock Lake with 31 people on board in approximately 15 feet of water. Twenty-nine of those people were consumers who had purchased a ticket from Defendants.

60.     Stretch Duck #7 was driven by Robert Williams, an employee of Ripley Entertainment Inc., on state highways and roads to Table Rock Lake from the office and platform where passengers embarked at 2320 W Highway 76, Branson, Missouri 65616.

61.     Robert Williams was employed, supervised, and trained by Defendants.

62.     Stretch Duck #7 was captained on Table Rock Lake by Kenneth McKee, an employee of Ripley Entertainment Inc.

13

**Exhibit 1**

63.    Kenneth McKee was employed, supervised and trained by Defendants. He was a captain licensed by the U.S. Coast Guard through Defendants' training program.

64.    Stretch Duck #7 left the platform at the office of Defendants located at 2320 W Highway 76, Branson, Missouri 65616 at approximately 6:30 p.m. on July 19, 2018.

65.    A Certificate of Inspection was issued by the United States Coast Guard for Stretch Duck #7 on February 7, 2017 and amended on March 13, 2018. The Certificate of Inspection required that the vessel not be operated waterborne when winds exceed 35 miles per hour and/or the wave height exceeds two feet.

66.    Defendants did not advise passengers the U.S. Coast Guard had placed limitations on the use of the duck boat, including Stretch Duck #7 in which they were riding, while on water during certain lake conditions.

67.    Defendants did not advise passengers the U.S. Coast Guard limited the duck boats to operating on the water when the wind did not exceed 35 miles per hour and/or the wave height did not exceed two feet.

68.    The "Table Rock Lake Adventure" passengers embarked on the evening of July 19, 2018, usually included, first, an approximately half-hour driven tour of Branson and second, a twenty to thirty-minute water tour of

Exhibit 1

Table Rock Lake before being returned to the main office/platform. "Adventures" typically lasted no longer than 70 minutes.

69.    Defendants would likely have to compensate passengers for the price of the ticket via a refund or gift certificate if the "Adventure" did not include the water portion.

70.    The National Weather Service issued a Severe Thunderstorm Watch on July 19, 2019 at 9:21 a.m. for the area including the waters of Table Rock Lake near Branson.

71.    The National Weather Service upgraded the area to a Severe Thunderstorm Warning on July 19, 2019 at 6:32 p.m. The Warning advised that winds up to 60 mph were possible. The Warning was valid for the area until 7:30 p.m.

72.    Defendants' employees were aware and discussed amongst themselves the Severe Thunderstorm Watch and Warning issued by the National Weather Service.

73.    Defendants' employees ordered the Driver and Captain of Stretch Duck #7 to bypass the driven tour of Branson and to head directly to Table Rock Lake so that the "Adventure" would be complete and no refunds would have to be provided even though potentially hazardous conditions were forecasted for the area including Table Rock Lake.

**Exhibit 1**

15

Electronically Filed - Taney - August 31, 2018 - 02:19 PM

74.    Stretch Duck #7 was scheduled to leave the main office for the "Table Rock Lake Adventure" at 6:30 p.m. The duck boat sank in Table Rock Lake a mere 30 minutes later at approximately 7:05 p.m. on July 19, 2018, entering the water just minutes before sinking.

75.    Seventeen people on board Stretch Duck #7 perished by drowning after it entered the Lake earlier than scheduled and sunk during a severe thunderstorm with winds over 60 mph:

    a.    Arya Coleman, age 1, from Indianapolis, Indiana

    b.    Maxwell Coleman, age 2, from Indianapolis, Indiana

    c.    Evan Coleman, age 7, from Indianapolis, Indiana

    d.    Reece Coleman, age 9, from Indianapolis, Indiana

    e.    Lance Smith, age 15, from Osceola, Arkansas

    f.    Glenn Coleman, age 40, from Indianapolis, Indiana

    g.    Angela Coleman, age 45, from Indianapolis, Indiana

    h.    Steve Smith, age 53, from Osceola, Arkansas

    i.    Janice Bright, age 63, from Higginsville, Missouri

    j.    Leslie Dennison, age 64, from Sherrard, Illinois

    k.    William Bright, age 65, from Higginsville, Missouri

    l.    Rose Hamman, age 68, from St. Louis, Missouri

    m.    William Asher, age 69, from St. Louis, Missouri

    n.    Belinda Coleman, age 69, from Indianapolis, Indiana

**Exhibit 1**

o.  Horace Coleman, age 70, from Indianapolis, Indiana

p.  Robert Williams, age 73, from Branson, Missouri

q.  Ervin Coleman, age 76, from Indianapolis, Indiana

76.  Eight victims were found deceased on the surface of the water.

77.  One victim was located trapped, still inside Stretch Duck #7.

78.  The other eight victims were found by divers at the bottom of Table Rock Lake, some near the final resting place of Stretch Duck #7.

79.  Those that survived were able to swim to safety, many finding refuge at the Branson Belle, another commercial passenger vessel nearby.

80.  Stretch Duck #54, also owned and operated by Defendants, entered the water of Table Rock Lake just minutes before Stretch Duck #7.

81.  The passengers of Stretch Duck #54 had left the office/platform of Defendants almost an hour earlier but had encountered mechanical issues with the initial duck boat assigned to them.

82.  Defendants, knowing that potentially hazardous conditions were imminent, still chose to transfer those passengers to Stretch Duck #54 so that they too could have the water portion of their "Adventure" and, therefore, Defendants would not have to refund their ticket prices.

83.  An anemometer measured wind speed of 73 miles per hour across Table Rock Lake the evening of July 19, 2018 far exceeding the U.S. Coast Guard limitations on Stretch Duck #7.

Exhibit 1

17

## V.    The Use of Life Jackets Can Save Lives.

84.    The U.S. Army Corps of Engineers reports that 84% of water related fatalities did not wear a life jacket.

85.    It takes an average of sixty seconds for an adult to drown and just 20 seconds for a child.

86.    A strong swimmer averages 10 minutes to put on a life jacket after entering the water.

87.    Regardless of a swimmer's abilities, unexpected conditions such as waves, current, exhaustion, or injury can affect how long a person can swim.

88.    Swimming abilities are likely to decrease with age.

89.    The National Safe Boating Council through a grant from the Sport Fish Restoration and Boating Trust Fund administered by the U.S. Coast Guard warns those that boat on Table Rock Lake that the weather should be a primary consideration.

90.    According to their recommendations and guidelines to boaters on Table Rock Lake, conditions can quickly change. Those that boat there should check weather conditions for the area in which they plan to boat before leaving for the destination. The National Weather Service broadcasts reports 24 hours each day via transmitter across the country providing the latest weather information directly for the service. The information can be accessed through a radio with a weather band. Those reports caution to always keep an eye to

18

**Exhibit 1**

Electronically Filed - Taney - August 31, 2018 - 02:19 PM

the sky when on the water. Forecasts, although helpful, can sometimes change. Squalls and thunderstorms can approach quickly and create a dangerous situation. If trapped on the water during a storm, boaters should make sure all passengers are wearing a life jacket. Boaters should also use discretion and delay plans for a day on the water if weather is questionable.

91.    Missouri law, § 302.220 RSMo, states that that each person under the age of seven who is aboard any watercraft should wear a life jacket that is approved by the United States Coast Guard. Any person who allows a person under the age of seven to be aboard any watercraft on the waters of this state without a life jacket is guilty of a misdemeanor.

92.    U.S. Coast Guard regulations state that the captain of a vessel is required to have his passengers don life jackets when hazardous conditions exist including during severe weather and that the captain or the crew should assist each passenger to obtain a life jacket and don it.

93.    Another U.S. Coast Guard regulation orders that before a vessel gets underway, the captain is required to make an announcement to all passengers that when hazardous conditions exist he will require the passengers to put on life jackets.

94.    As a U.S. Coast Guard licensed captain, Kenneth McKee was required to follow all U.S. Coast Guard regulations concerning the donning of life jackets and making the appropriate announcements.

19

**Exhibit 1**

95.     Kenneth McKee made no such announcement. In fact, according to witness accounts, he stated that passengers would not need life jackets during their adventure tour.

96.     Neither McKee nor any member of the crew ordered that passengers don life jackets when clearly hazardous conditions existed, nor did they assist or advise any passenger including children or those that could not swim to don a life jacket.

97.     The passengers of Stretch Duck #54 likewise were never advised to don their life jackets by their Captain nor any crew member when clearly hazardous conditions existed.

98.     No one on Stretch Ducks #7 or #54, not even the children under seven, were wearing a life jacket when the boat entered the water or at any time after that.

99.     When engaging in the conduct described herein, Defendants acted wantonly, willfully, outrageously, and with reckless disregard for the consequences of their actions.

100.    Defendants violated the Missouri Merchandising Practices Act ("MMPA") by engaging in unfair practices, deception, fraud, false promises, and material omissions.

**Exhibit 1**

**Count I – Violations of the Missouri Merchandising Practices Act**
**Unfair Practices**
**Against All Defendants**

101.    Plaintiff incorporates all allegations stated above.

102.    The MMPA prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." § 407.020.1, RSMo.

103.    The sale of tickets for excursions on the amphibious vehicles known as duck boats constitutes "merchandise" within the meaning of the statute. § 407.010(4), (6) RSMo.

104.    Any act, use or employment of any act or omission declared unlawful by § 407.020, RSMo is a violation of the MMPA "whether committed before, during or after the sale, advertisement or solicitation." § 407.020.1, RSMo.

105.    Unfair practices violating the MMPA include "any practice" that "offends any public policy as it has been established by the . . . statutes or common law of this state" and "presents a risk of, or causes, substantial injury to consumers." 15 CSR § 60-8.020.

**Exhibit 1**

21

Electronically Filed - Taney - August 31, 2018 - 02:19 PM

106.     Unfair practices violating the MMPA also include any practice that "violates state or federal law intended to protect the public and presents a risk of, or causes, substantial injury to consumers." 15 CSR § 60-8.090.

107.     Defendants engaged in conduct that violated state and federal statutes, common law, and regulations promulgated by the U.S. Coast Guard, the National Transportation Safety Board, the U.S. Dept. of Transportation, and agencies of the State of Missouri in their operation of their fleet of duck boats, including Stretch Duck #7 and similar duck boats, for commercial purposes. The specific statutes, regulations, and common law violated by Defendants, include, but are not limited to, § 577.025 RSMo (Negligent operation of a vessel), § 565.024 RSMo (Involuntary manslaughter, first degree), § 565.027 RSMo (Involuntary manslaughter, second degree), § 569.050 RSMo (Endangering the welfare of a child in the second degree), § 565.056 RSMo (Fourth degree assault), § 306.22 RSMo (Personal flotation device, who must wear, when, exception), 46 CFR § 185.508 (Wearing of life jackets), 46 CFR § 506 (Passenger safety orientation), negligence, gross negligence, common law fraud, and other statutes, regulations, and common law.

108.     Such statutes, common law, and regulations are intended to protect the public from hazards caused by the operation of amphibious vehicles such as duck boats, as well as all other commercial and private vessels operating upon water.

**Exhibit 1**

Electronically Filed - Taney - August 31, 2018 - 02:19 PM

### Count II - Violations of the Missouri Merchandising Practices Act
### Unfair Practices
### Against All Defendants

109.    Unfair practices violating the MMPA also include any practice that "violates the duty of good faith in solicitation, negotiation and performance, or in any manner fails to act in good faith." 15 CSR § 60-8.040

110.    Defendants violated their duty of good faith by, among other things, failing to ensure the safe design and operation of their duck boats generally, by failing to properly train crew and staff for their duck boats, and by failing to ensure that proper safety precautions are followed on their duck boats.

111.    Defendants also violated their duty of good faith by operating Stretch Duck #7 and Stretch Duck #54 in unsafe conditions with commercial passengers on board on July 19, 2018.

112.    Defendants' actions presented a substantial risk of harm to their passengers generally, and specifically on July 19, 2018 when those acts caused the deaths of 17 passengers.

### Count III – Violations of the Missouri Merchandising Practices Act
### Fraud
### Against All Defendants

113.    Plaintiff incorporates all allegations stated above.

114.    "Fraud" violating the MMPA "includes any acts, omissions or artifices which involve falsehood, deception, trickery, *breach of legal or*

23

Exhibit 1

*equitable duty, trust, or confidence*, and are injurious to another or by which an undue or unconscionable advantage over another is obtained." 15 CSR § 60-9.040(1) (emphasis added).

115.    Fraud "is not limited to common law fraud or deceit and is not limited to finite rules, but extends to the infinite variations of human invention…" 15 CSR § 60-0.040(2).

116.    Defendants breached their legal or equitable duties owed to their passengers by failing to ensure the safe design and operation of their duck boats.

117.    Defendants further breached their legal or equitable duties owed to their passengers by advertising that their duck boats were safe for all ages and physical abilities when they knew that their duck boats had safety and design flaws and could be unsafe in certain weather conditions.

118.    Defendants further breached their legal or equitable duties owed to their passengers by operating the duck boats in unsafe or dangerous conditions on July 19, 2018.

119.    Defendants further breached their legal or equitable duties owed to their passengers by failing adequately to train their crews, agents, and employees.

120.    Defendants further breached their legal or equitable duties owed to their passengers by failing to: (a) operate or maintain the duck boats in

24

Exhibit 1

Electronically Filed - Taney - August 31, 2018 - 02:19 PM

accord with standards established by the NTSB; (b) operate or maintain the duck boats in accord with standards established by the U.S. Coast Guard; (c) operate or maintain the duck boats within standards established by the statutes, regulations, and common law of the State of Missouri; (d) add sufficient buoyancy as per NTSB recommendations; (e) operate the duck boats with sufficient pumping capacity; and (f) remove the canopy and require life jackets be worn while waterborne until sufficient buoyancy was added to ensure the duck boat would not sink if flooded.

### Count IV – Violations of the Missouri Merchandising Practices Act
### Deception
### Against All Defendants

121.    Plaintiff incorporates all allegations stated above.

122.    Deception that violates the MMPA is "is any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression."  15 CSR § 60-9.020

123.    Defendants violated the MMPA through methods, acts, uses, practices, and advertisement that had the tendency or capacity to mislead or tended to create a false impression that the duck boats could be: 1) operated safely, 2) ridden safely by young children, the elderly, the disabled, and non-swimmers, and 3) operated in unsafe and dangerous weather conditions.

Exhibit 1

25

### Count V – Violations of the Missouri Merchandising Practices Act
### Material Omission
### Against All Defendants

124.    Plaintiff incorporates all allegations stated above.

125.    A material omission that violates the MMPA includes any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her." 15 CSR § 60-9.110

126.    Defendants violated the MMPA by failing to disclose to passengers that their duck boats cannot be operated without risk to passengers and presented a risk of injury and death.

127.    Defendants violated the MMPA by failing to disclose to passengers that their duck boats, including Stretch Duck #7, had design and mechanical issues regarding adequate dewatering pumps and buoyancy efficiencies.

128.    Defendants violated the MMPA by failing to disclose to passengers that their duck boats, including Stretch Duck #7, posed a danger to passengers when the canopy was not removed.

129.    Defendant violated the MMPA by failing to disclose to passengers that their duck boats, including Stretch Duck #7, had design and mechanical issues, including their inability to pass Missouri Department of Transportation standards.

130.    Defendants violated the MMPA by failing to disclose to passengers that their duck boats, including Stretch Duck #7, should not be operated in the

**Exhibit 1**

26

dangerous and hazardous conditions present on July 19, 2018, and that doing so could cause a substantial risk of harm to those on board.

131.    Defendants violated the MMPA by failing to disclose to passengers that it was unsafe to operate their duck boats when winds were over 35 mph and in over two foot waves.

### Count VI – Violations of the Missouri Merchandising Practices Act
### False Promises
### Against All Defendants

132.    Plaintiff incorporates all allegations stated above.

133.    A false promise that violates the MMPA is "any statement or representation which is false or misleading as to the maker's intention or ability to perform a promise, or likelihood the promise will be performed." 15 CSR § 60-9.060

134.    Defendants made the express or implied promise that they could keep their passengers safe and that their duck boats could be operated safely on July 19, 2018.  Such promise was false as to both Defendants ability to perform and the likelihood that such promise would be performed.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor the State and order:

(a) a preliminary and permanent injunction enjoining the Defendants and their officers, agents, employees, sales persons, contractors,

**Exhibit 1**

representatives, assigns, successors in interest and any other individuals acting at their direction or on their behalf from engaging in any act in trade or commerce related to the operation or sale of the amphibious passenger vessels known as the duck boats, including the selling or advertisement of any tickets for excursions on such vessels;

(b) full restitution to all consumers who suffered any ascertainable loss per § 407.100.4;

(c) all civil penalties authorized by law, including by § 407.100.6, RSMo; (d) punitive damages;

(e) all reasonable costs attributable to the prosecution and investigation of this civil action per § 407.130;

(f) an amount of money equal to 10% of the total restitution ordered against the Defendants per § 407.140.3; and

(g) such further relief as the Court deems just and appropriate.

Respectfully submitted,

**JOSHUA D. HAWLEY**
**MISSOURI ATTORNEY GENERAL**

*/s/ Natalie Warner*
D. John Sauer, Mo. Bar No. 58721
First Assistant and State Solicitor

**Exhibit 1**

28

Ryan Bangert, Mo. Bar No. 69644
  Deputy Attorney General – Civil Litigation
Amy Haywood, Mo. Bar No. 66555
  Chief Counsel, Consumer Protection
Natalie Warner, Mo. Bar No. 56712

  Assistant Attorney General
Amy Davis, Mo. Bar No. 62834
  Assistant Attorney General
Missouri Attorney General's Office
Supreme Court Building
207 W. High Street
P.O. Box 899
Jefferson City, Missouri 65102
(314) 340-4977 (telephone)
(314) 340-7957 (facsimile)
Natalie.warner@ago.mo.gov
*Counsel for Plaintiff*

**Exhibit 1**



# IN THE 46TH JUDICIAL CIRCUIT, TANEY COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>TONY W. WILLIAMS | **Case Number: 1846-CC00162** |
| Plaintiff/Petitioner:<br> STATE OF MISSOURI | Plaintiff's/Petitioner's Attorney/Address<br>AMY KATHLEEN DAVIS<br>149 PARK CENTRAL SQUARE<br>SUITE 1017<br>SPRINGFIELD, MO 65806 |
| vs. | |
| Defendant/Respondent:<br> BRANSON DUCK VEHICLES, LLC | Court Address:<br>266 MAIN STREET<br>PO BOX 129<br>FORSYTH, MO 65653 |
| Nature of Suit:<br>CC Other Extraordinary Remedy | |

(Date File Stamp)

## Summons in Civil Case

The State of Missouri to:  RIPLEY ENTERTAINMENT INC
                        Alias:

CT CORPORATION SYSTEM
120 SOUTH CENTRAL AVE.
CLAYTON, MO 63105

*COURT SEAL OF*

*CIRCUIT COURT OF MISSOURI*

*TANEY COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

| 08/31/2018 | /s/ Beth Wyman,tm |
|---|---|
| Date | Clerk |

Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: _____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____      _____
Printed Name of Sheriff or Server            Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*      Subscribed and sworn to before me on _____ (date).

My commission expires: _____      _____

                                   Date                           Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

*Exhibit 1*

OSCA (06-18) SM30 (SMCC) *For Court Use Only:* **Document Id # 18-SMCC-479**    1 of 1    Civil Procedure Form No. 1; Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 6:18-cv-03293-MDH   Document 1-1   Filed 09/10/18   Page 31 of 33



## IN THE 46TH JUDICIAL CIRCUIT, TANEY COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>TONY W. WILLIAMS | **Case Number:  1846-CC00162** |
| Plaintiff/Petitioner:<br> STATE OF MISSOURI | Plaintiff's/Petitioner's Attorney/Address<br>AMY KATHLEEN DAVIS<br>149 PARK CENTRAL SQUARE<br>SUITE 1017<br>SPRINGFIELD, MO  65806 |
| vs. | |
| Defendant/Respondent:<br> BRANSON DUCK VEHICLES, LLC | Court Address:<br>266 MAIN STREET<br>PO BOX 129<br>FORSYTH, MO  65653 |
| Nature of Suit:<br>CC Other Extraordinary Remedy | |

(Date File Stamp)

## Summons in Civil Case

**The State of Missouri to:  BRANSON DUCK VEHICLES, LLC**
                       **Alias:**

**CT CORPORATION SYSTEM**
**120 SOUTH CENTRAL AVE.**
**CLAYTON, MO  63105**
*COURT SEAL OF*

*TANEY COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

| 08/31/2018 | /s/ Beth Wyman,tm |
|---|---|
| Date | Clerk |

Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: _____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____        _____
Printed Name of Sheriff or Server        Signature of Sheriff or Server
          **Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*    Subscribed and sworn to before me on _____ (date).

    My commission expires: _____    _____
                  Date              Notary Public

| **Sheriff's Fees, if applicable** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

**Exhibit 1**

OSCA (06-18) SM30 (SMCC) *For Court Use Only:* **Document Id # 18-SMCC-480**    1 of 1    Civil Procedure Form No. 1; Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 6:18-cv-03293-MDH   Document 1-1   Filed 09/10/18   Page 32 of 33

Electronically Filed - Taney - September 04, 2018 - 03:42 PM

IN THE CIRCUIT COURT OF TANEY COUNTY
STATE OF MISSOURI

STATE OF MISSOURI, ex rel.                )
Attorney General Joshua D. Hawley,        )
                                          )
            Plaintiff,                    )
                                          )        Case No. 1846-CC00162
      v.                                  )
                                          )        Division: 1
BRANSON DUCK VEHICLES,                    )
LLC, et al.,                              )
                                          )
            Defendant.                    )

**<u>ENTRY OF APPEARANCE</u>**

COMES NOW Natalie Warner, Assistant Attorney General for the

State of Missouri and enters her appearance on behalf of Plaintiff.

Respectfully submitted,

JOSHUA D. HAWLEY
Attorney General


<u>/s/ Natalie Warner</u>
Natalie Warner, MO Bar # 56712
Assistant Attorney General
P.O. Box 861
St. Louis, MO 63101
(314) 340-6816; Fax (314) 340-7957
natalie.warner@ago.mo.gov

ATTORNEYS FOR PLAINTIFF

**Exhibit 1**

1